J-S71018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.M., MINOR CHILD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M., MOTHER | : | |
| | : | No. 767 EDA 2016 |

Appeal from the Order Entered February 3, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000586-2015
CP-51-DP-0001168-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.L., MINOR CHILD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M., MOTHER | : | |
| | : | No. 768 EDA 2016 |

Appeal from the Order Entered February 3, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000587-2015
CP-51-DP-0000193-2012

BEFORE:  BOWES, J., PANELLA, J., and FITZGERALD[*], J.

MEMORANDUM BY PANELLA, J.            **FILED SEPTEMBER 23, 2016**

Appellant, T.M. ("Mother"), appeals from the February 3, 2016 orders

involuntarily terminating her parental rights to her children, A.A.M., born in

_____

[*] Former Justice specially assigned to the Superior Court.

June 2012 and A.R.L., born in October 2010 (collectively, "Children") under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1,2] We affirm.[3]

In its opinion, the trial court sets forth the relevant facts and procedural history of this case, which we incorporate herein. **See** Trial Court Opinion, 5/16/16, at 1-2 (unpaginated). On August 31, 2015, Philadelphia County Department of Human Services ("DHS") filed petitions for involuntary termination of parental rights of Mother to Children. On February 3, 2016, the trial court held a hearing on these petitions. Of particular importance, the trial court heard the testimony of Lakesha Akins, a DHS social worker, and Amy Sesay, a caseworker for Youth, Family and Children's Service ("YFC"). That same day, the trial court entered orders terminating Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

Mother timely filed notices of appeal, together with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[1] E.L., ("Father") is the birth father of Children. Father signed a voluntary relinquishment of his parental rights on February 29, 2016. Father is not a party to this appeal, nor did he file an appeal.

[2] Mother has another child, J.A., who is not subject to these appeals.

[3] On April 11, 2016, this Court consolidated these appeals.

Mother raises two questions on appeal:

1. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. §2511 (a)(1), (2), (5), and (8) as [M]other made progress towards working and meeting her [Family Service Plan] goals, namely staying drug free, working towards obtaining housing, working on parenting skills, and other goals, during [Children's] placement?

2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of [Children] as required by the Adoption Act 23 Pa.C.S.A. §2511(b)?

Mother's Brief at 2.

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000)). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the

asserted grounds for seeking the termination of parental rights are valid. *See id*., at 806. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *See In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (citation omitted).

In terminating Mother's parental rights, the trial court relied upon § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to

be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

…

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

...

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

With respect to § 2511(a)(2), the grounds for termination of parental rights, due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; "to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citation omitted). Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See id*., at 340. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citations omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

On appeal, Mother argues she is attempting to establish a loving relationship with Children, and that DHS did not prove that Mother could not remedy the conditions that led to Children's removal. Mother asserts that her parental rights should not be terminated due to economic factors, as she is unable to obtain appropriate housing because of her income.

At the hearing, Lakesha Akins, a DHS social worker, testified that Children were placed in DHS care because Mother was inconsistent with her

mental health treatment, there were issues with housing as the home was in a deplorable condition, and Children had hygiene issues. *See* N.T., Hearing, 2/3/16 at 19. Ms. Akins further testified Mother had not completed her parenting capacity evaluation. *See id*., at 23. Ms. Akins stated that Mother only had two unsupervised visits with Children in the 2½ years Children have been in DHS custody. *See id*., at 25. Mother testified that she had tried to be independent in the past, but has now begun asking for help from her own mother. *See id*., at 71.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id*., at 340. That is the case here.

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. Accordingly, we find that the trial court's determinations regarding § 2511(a)(2) are supported by sufficient, competent evidence in the record.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Child pursuant to § 2511(b). Pursuant to § 2511(b), the trial court's inquiry is specifically directed to a

consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. ***See In re C.M.S.***, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***Id***. at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***See id***.

Mother argues that the trial court found Mother to be fully compliant with her Family Service Plan. This is simply untrue. ***See*** Trial Court Opinion, 5/16/16, at 3 (unpaginated) ("In the instant case, the mother did not complete her Family Service Plan (FSP) goals.") Mother further argues that she made efforts to comply with both DHS and trial court objectives, and she attempted to make herself a better parent so that she could reunify with Children because she loves Children and has a bond with Children. ***See id***. The trial court's findings are in direct contention with Mother's assertions. After detailing all of Mother's failings, the trial court concluded that Children would not suffer irreparable harm if Mother's rights were terminated, and that it is in Children's best interest that Mother's parent rights be terminated, and the goal changed to adoption. ***See id***., at 5 (unpaginated). Again, the trial court relied on the testimony of Lakesha Akins, the DHS social worker, and also the testimony of Amy Sesay, the YFC caseworker.

Ms. Akins testified that Children do not have a parental bond with Mother. *See* N.T., Hearing, 2/3/16 at 27. Ms. Akins further testified that Children would not suffer permanent emotional harm if Mother's parental rights are terminated. *See id*., at 28. Ms. Akins concluded that it is in the Children's best interest to terminate Mother's parental rights. *See id*.

Ms. Sesay, testified that Children look to their foster parent to meet their daily needs. *See id*., at 50. Ms. Sesay concluded that it is in the Children's best interest to terminate Mother's parental rights because Children are happy in the foster home, and the foster home is stable. *See id*. at 49. The trial court found she testified credibly. *See* Trial Court Opinion, 5/16/16, at 5 (unpaginated).

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and Children, which, if severed, would be detrimental to Children, and that the termination of Mother's parental rights would best serve the needs and welfare of Children. As the trial court noted, "[i]n the instant matter, the [C]hildren have been in placement care for over twenty-five months. The testimony established that the [C]hildren are in a stable, happy home." *Id*., at 3.

We affirm the orders terminating Mother's parental rights on the basis of § 2511(a)(2) and (b) of the Adoption Act.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/23/2016